[Cite as *Steele v. Steele*, 2012-Ohio-291.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY   COUNTY

| | | |
|---|---|---|
| CHARLES R. STEELE | : | |
| | : | Appellate Case No. 24702 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 05-DR-864 |
| v. | : | |
| | : | |
| BOBBIE JO STEELE, nka MALOCU | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 27th day of January, 2012.

. . . . . . . . . . .

H. STEVEN HOBBS, Atty. Reg. #0018453, The Hobbs Law Office, 119 North Commerce Street, Post Office Box 489, Lewisburg, Ohio 45338
        Attorney for Plaintiff-Appellant

BRIAN A. SOMMERS, Atty. Reg. #0072821, 130 West Second Street, Suite 2100, Dayton, Ohio 45402
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1}   Plaintiff-appellant Charles R. Steele, the divorced father of M., born in April 2004, appeals from an order of the trial court terminating a shared parenting arrangement and designating defendant-appellee Bobbi Malocu, M.'s mother, as the residential parent and custodian.  Steele acknowledges that it was appropriate to terminate the shared parenting

arrangement, in view of difficulties that arose in the co-operation of the parents, but contends that the trial court abused its discretion by failing to designate him to be the residential parent and custodian.

{¶ 2}   From our review of the record, including the transcript of the trial and exhibits admitted therein, we conclude that the evidence in the record supports the trial court's finding that Malocu's designation as the residential parent and custodian was in M.'s best interests. Accordingly, the order of the trial court from which this appeal is taken is Affirmed.

## I.   The Course of Proceedings in the Trial Court.

{¶ 3}   M., the daughter of the parties, who were married, was born in April 2004. Malocu had two daughters by a previous marriage.   Steele was employed by the Transportation Safety Administration, and worked the 4:00 a.m. to 12:30 p.m. shift at the Dayton Airport.   Malocu had been employed by the TSA, but at the time of M.'s birth, and thereafter, was suffering from a back injury, and did not work.   At the time of trial, she had a Social Security disability claim that had been denied administratively, and was on appeal to the United States District Court for the Southern District of Ohio.   She was a stay-at-home mom.   She testified that during her marriage to Steele, he agreed to her being the stay-at-home parent.

{¶ 4}   The parties were divorced in 2007.   They entered into a shared parenting arrangement with Malocu's residence being designated M.'s residence for school purposes.

{¶ 5}   Malocu married her current husband, Frank Malocu, and moved into his Vandalia residence in 2008.   In 2009, after disagreements arose concerning the manner in which shared parenting was being handled, both Steele and Malocu filed motions to terminate

the shared parenting arrangement. Each wished to be designated M.'s residential parent and custodian.

{¶ 6} Following a hearing at which Steele and Malocu were the sole witnesses, a magistrate decided that the shared parenting arrangement should be terminated, with Malocu being designated M.'s residential parent and custodian. Steele objected. On May 26, 2011, the trial court entered an order overruling Steele's objections, designating Malocu to be M.'s residential parent and custodian, and making appropriate provision for parenting time and child support. From this order, Steele appeals.

## II. The Trial Court Did Not Abuse its Discretion.

{¶ 7} Steele's sole assignment of error is as follows:

{¶ 8} "THE TRIAL COURT ERRED BY DESIGNATING THE APPELLEE THE MINOR CHILD'S RESIDENTIAL PARENT."

{¶ 9} Steele does not challenge the trial court's decision to terminate the shared parenting arrangement, which both parties requested. His sole objection to the trial court's order is that it should have designated him to be the residential parent and custodian. Steele acknowledges that our review of this issue is governed by the abuse-of-discretion standard of review. He frames the issue: "Thus, the seminal issue before this Court is whether the evidence in the record supports the Trial Court's finding designating the Appellee residential parent was in the child's best interest."

{¶ 10} Steele cites the factors set forth in R.C. 3109.04(F)(1), which the trial court has directed a trial court to consider in determining the best interest of a child with respect to the allocation of parental rights and responsibilities.

{¶ 11} Steele recognizes that R.C. 3109.04(F)(1)(b) – "the wishes and concerns of the child, as expressed to the court" – does not literally apply, because the trial court did not interview M. in chambers, a predicate for the application of this factor. But he argues that the trial court failed to consider that M. had told the guardian ad litem that "she wanted to spend more time with [Steele]." This seems to refer to the following statement in the guardian ad litem's report: "She consistently indicated in both sessions that she still wants to be with both parents 'the same' and acknowledged her desire to continue to spend more time with father. She also volunteered that she likes the way that things have been recently, getting to spend more time with father, but she feels as though mother doesn't want her to go to father's as often."

{¶ 12} M.'s statement cited in the guardian ad litem's report appears to be more of an expression of a desire to maintain the status quo, rather than an expression of M.'s desire to enlarge her time with her father. It is somewhat difficult to evaluate the order of visitation set forth in the trial court's order from which this appeal is taken, in relation to the status quo ante, since the parties' testimony at trial indicated that the parenting times were, commendably, frequently changed by agreement of the parties to accommodate one another's schedules, and the child's schedule, without having to go to court to change the parenting times set forth in the order. But from our review of the testimony, it appears that the actual parenting times followed by the parties before the order of May 26, 2011, from which this appeal is taken, are at least roughly the same as, if not exactly the same as, the parenting times prescribed in the order. It appears from the record, then, that M. got her wish, and that the time she will spend with her father, Steele, has not been diminished by the May 26, 2011

order.

{¶ 13} Steele notes that his relationship with his daughter is close. But he acknowledges that her relationships with Malocu and her step-father, Frank, are also good. He argues that his daughter is well-adjusted to his home. The evidence reflects that she is also well-adjusted to the home her mother shares with her step-father.

{¶ 14} M. suffers from a bowel problem that, at the time of trial, had not been definitively diagnosed. The treating physicians seemed to believe that it might be attributable to a birth defect, and that with appropriate care, M. might well grow out of it.

{¶ 15} Much of Steele's argument concerns the fact that Malocu has taken their daughter to see a chiropractor. He objects to her having done so without prior notice to him. Malocu had benefitted from treatment by the chiropractor, and thought that their daughter might, also. She scheduled M. for an initial examination, but not for a treatment, on the same day that she, Malocu, was going in for a treatment. It appears that she may not have given Steele prior notice of the initial visit, although she did inform him by e-mail of treatments that the chiropractor wanted to give M. before a scheduled biopsy of her colon. She also informed him that M.'s pediatrician and bowel specialist had said she could be treated by the chiropractor. In fact, the evidence admitted at the trial includes an e-mail from Steele to Malocu, with respect to the chiropractor treatments that: "Since this visit is not an emergency you need to schedule both visits after 1 pm. This way I can attend as according to our agreement." This e-mail is dated the day after M.'s initial visit to the chiropractor.

{¶ 16} Steele argues that: "Not only did [Malocu] keep [Steele] in the dark concerning this 'alternative' treatment, she kept the child's medical doctors in the dark[,] too." The

evidence in the record would permit the trial court to find that Malocu did not keep either Steele or the physicians treating M. "in the dark" concerning the fact that Malocu was taking M. to a chiropractor for treatments.

{¶ 17} M. had a biopsy of her colon. She remained in the hospital overnight. Both Malocu and Steele stayed with her overnight. The biopsy was on a Wednesday. The next day, at 9:18 p.m., Malocu sent Steele an e-mail that included the following advisory: "[S]ince the surgeon told us not to send [M.] to school tomorrow [Friday], [I] will keep her home and let her rest until you pick her up at 5:30 p.m." On Friday, Steele showed up at 12:30, *accompanied by a police officer*, to pick M. up for his parenting time. Steele was persuaded to leave M. with her mother and come back at 5:30. When Steele came back at 5:30, Malocu learned that he intended to take her to a Chick-fil-A fast-food restaurant where there is a play area for climbing and sliding. Malocu asked him instead to take M. to his home, where she could lie down and rest. Malocu reminded Steele that the discharge instructions had included a high-fiber diet. Steele took M. to the Chick-fil-A.

{¶ 18} Steele argues that Malocu should have allowed him to pick M. up at 12:30 p.m. on the second day after her biopsy, since, as the result of her surgical procedure, which involved stitching up her colon, she did not have school that Friday. It was their agreement that on Fridays when M. did not have school, Steele could pick her up at 12:30 p.m. instead of 5:30 p.m., the regular time. Steele cites Malocu's refusal to have allowed him to pick M. up at 12:30 p.m. in support of his argument that Malocu interferes with his parenting time. On the evidence in the record, we find Malocu's actions on that occasion to have been more indicative of a concern for M.'s welfare than Steele's. The evidence in the record

demonstrates that Malocu has been sensitive, reasonable, and accommodating to Steele's need for parenting time.

{¶ 19} Finally, Steele argues that: "The undisputed evidence is [Malocu] is late to exchanges 85% of the time." This is based upon his testimony that Malocu would bring M. to the airport, where Steele works, fifteen to twenty minutes late "on a regular basis," which he then estimated as being 80 to 85% of the time. As Malocu notes in her brief, until an agreed order was filed in January, 2010, Malocu provided all of the transportation of M. back and forth between the parties. She undoubtedly was late some of the time. But Steele's testimony that she was fifteen to twenty minutes late 80 to 85% of the time was not undisputed. Malocu testified on that subject as follows:

{¶ 20} Q. Okay. Now, he complains on direct and [sic] that you're late constantly.

{¶ 21} No.

{¶ 22} Q. Do you recall that?

{¶ 23} Yes.

{¶ 24} Q. Were you late?

{¶ 25} No.

{¶ 26} Q. You call him if you're running a couple minutes late?

{¶ 27} Yes.

{¶ 28} We conclude that the trial court was not required to accept as true Steele's testimony that Malocu was fifteen to twenty minutes late 80 to 85% of the time.

{¶ 29} We have reviewed the record, including the entire transcript of the trial. We find evidence therein that although their parenting styles may differ, both parties are loving,

caring and responsible parents. Either would make a perfectly acceptable residential parent and custodian. The guardian ad litem submitted both an assessment and a subsequent update, after extensive interviews of the parties, M., the step-father, family sessions, telephone contacts with one of Steele's proposed childcare providers, the father of another proposed childcare provider, Malocu's mother and one of Malocu's other daughters, the principal at M.'s school, materials received from both parties, and medical records received from the digestive specialist treating M. The guardian ad litem recommended that Malocu be the residential parent and guardian.

{¶ 30} We conclude that the evidence in the record supports the trial court's finding that it is in M.'s best interest for Malocu to be her residential parent and custodian, and that the trial court's order to that effect is not an abuse of discretion. Steele's sole assignment of error is overruled.

### III. Conclusion.

{¶ 31} Steele's sole assignment of error having been overruled, the order of the trial court from which this appeal is taken is Affirmed.

. . . . . . . . . . . .

FROELICH and HALL, JJ., concur.


Copies mailed to:

H. Steven Hobbs
Brian A. Sommers
Hon. Denise L. Cross